**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ALLAN CONTRACTING ENTERPRISES**          **CIVIL ACTION**

**VERSUS**                                 **NO. 23-2632**

**CUMMINS INC. (OF INDIANA)**              **SECTION: D (5)**

**ORDER AND REASONS**

Before the Court is Cummins, Inc. [sic] Motion for Summary Judgment, filed by defendant Cummins Inc. (of Indiana) ("Cummins").[1]  Plaintiff, Allan Contracting Enterprises ("ACE") opposes the Motion,[2]  and Cummins has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion for Summary Judgment is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns services provided to by ACE, a Tennessee-based company and "outsourced maintenance vendor,"[4] to Cummins, "a global power technology leader that specializes in diesel and alternative fuel engines, generators, and related components and technology.[5]  On or about June 12, 2023, ACE filed a Petition on Open Account in Louisiana state court, seeking to recover $144,959.96, along with interest, reasonable attorney's fees, and costs, from Cummins for labor and materials allegedly provided between October 31, 2022 and January 23, 2023 at Cummins' two Louisiana facilities.[6]  ACE asserts that it made a formal demand for payment upon

---

[1] R. Doc. 48.
[2] R. Doc. 51.
[3] R. Doc. 55.
[4] R. Doc. 48-1 at ¶ 3; R. Doc. 48-3 at p. 2.
[5] R. Doc. 48-1 at ¶ 1; R. Doc. 48-3 at p. 2.
[6] R. Doc. 1-1 at ¶¶ 2–6.

Cummins on March 16, 2023, but that Cummins has not responded other than to say that the "invoices were voided while they are being reviewed by our legal team."[7] ACE alleges that more than 30 days have passed since the mailing of its formal demand and that Cummins has intentionally refused to pay the outstanding balance on its open account.[8]  ACE asserts the following claims against Cummins in its Petition: (1) breach of contract; (2) bad faith breach of contract; (3) open account; (4) unjust enrichment; and (5) quantum meruit.[9]  Cummins removed the matter to this Court on July 20, 2023, asserting that the Court has diversity jurisdiction over ACE's claims.[10]

On August 11, 2023, Cummins filed an Answer, Defenses, Request for Jury Trial, and Counterclaim, and provided additional allegations regarding the dispute between the parties.[11]  Cummins claims that ACE is a sole proprietorship owned by Curtiss Williams and "a Tennessee business that performs facility maintenance work such as lawn care and equipment and utilities coordination."[12]  According to Cummins, Paul Jones was a plant manager for Cummins at its facility in Memphis, Tennessee, and that Jones assigned ACE as a vendor at the Memphis facility.[13] Cummins alleges that Jones was assigned to serve as the plant manager for Cummins' two Louisiana facilities in January 2022, and that upon his arrival to

---

[7] *Id*. at ¶¶ 7–8 (internal quotation marks omitted).
[8] *Id*. at ¶¶ 9–11.
[9] *Id*. at ¶¶ 12–21.
[10] R. Doc. 1.  In response to the Court's Order, Cummins filed an Amended Notice of Removal on July 28, 2023 to properly allege the citizenship of the parties.  *See* R. Docs. 5 & 6.
[11] R. Doc. 10.
[12] *Id*. at ¶¶ 2 & 6–8.
[13] *Id*. at ¶¶ 9–10.

Louisiana Jones "abruptly terminated" the local vendors and assigned ACE as a vendor.[14]  Cummins claims that from January 2022 to December 2022, ACE traveled from Memphis to Louisiana, allegedly performed various tasks, and submitted invoices to Cummins for per diem/lodging costs and services provided.[15]  Cummins alleges that it was billed $878,373.60 for those services, and that Jones, as the plant manager, consistently approved the invoices even though they failed to detail the work performed and lacked sufficient documentation to support the invoiced amounts.[16]  Cummins asserts that it paid ACE $777,472.64 between March 2022 and November 2022 based on the approved invoices.[17]

Cummins further alleges in its counterclaim that it conducted an internal audit of ACE's invoices in December 2022, and discovered that ACE had double-billed Cummins for services allegedly performed at its two facilities in Louisiana, that ACE submitted invoices for work that was not completed, and that ACE excessively inflated its invoices considering the services allegedly provided.[18]  Cummins also claims that it discovered an improper relationship between ACE and Cummins' employee Jones, whereby ACE purchased a first-class plane ticket for Jones in exchange for Jones approving the invoices for payment.[19]  Cummins asserts that it terminated Jones' employment upon discovering the improper relationship.[20] According to Cummins, ACE continued to submit invoices after Jones' departure and

---

[14] *Id.* at ¶¶ 11–13.
[15] *Id.* at ¶ 16.
[16] *Id.* at ¶¶ 17–18.
[17] *Id.* at ¶ 19.
[18] *Id.* at ¶¶ 20–46.
[19] *Id.* at ¶¶ 47–62.
[20] *Id.* at ¶ 58.

Cummins requested that ACE provide additional information to substantiate the invoiced amounts, but ACE has failed to provide such information.[21]  Based upon these facts, Cummins asserts the following two counterclaims against ACE: (1) violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* ("LUTPA"); and (2) fraud.[22]

Cummins filed the instant Motion for Summary Judgment on August 30, 2024, seeking to dismiss with prejudice all of ACE's claims in this case.[23]  Cummins argues that ACE's breach of contract, bad faith breach of contract, and open account claims must be dismissed because ACE is an unlicensed contractor under La. R.S. 37:2150.1, rendering any contract between the parties an absolute nullity under La. Civ. Code art. 2033.[24]  Cummins claims that the services allegedly performed by ACE "fall squarely within the definition of a 'contractor'" set forth in La. R.S. 37:2150.1(4)(a), since Curtiss Williams, the owner of ACE, testified that ACE performed the following services at the Louisiana facilities: (1) installation of plywood flooring; (2) application of epoxy to the concrete flooring; (3) erection of a commercial carport as a station to house generators; (4) removal and demolition (*i.e.,* tear down) of industrial barn doors; (5) installation of barricade fences, guardrails, and wire racks; and (6) supplied gate hardware and parts for an overhead crane.[25]  Cummins claims that Williams also testified that ACE laid tile flooring, dug out subterraneous roof drains, repaired

---

[21] *Id*. at ¶¶ 59–62.
[22] *Id*. at ¶¶ 63–83.
[23] R. Doc. 48.
[24] R. Docs. 48 & 48-3 at pp. 6 & 8–16.
[25] R. Doc. 48-3 at p. 10 (*citing* R. Doc. 48-11 at pp. 2 & 3; R. Doc. 48-12 at pp. 2 & 3; R. Doc. 48-13 at p. 2; R. Doc. 48-14 at p. 2; R. Doc. 48-15 at pp. 2–4; & R. Doc. 48-16 at p. 10).

overhead cranes, installed storage cabinets and tank holdings, repaired roof leaks, and installed new overhead LED lighting throughout the work area.[26]  Cummins contends that the $50,000 threshold required by La. R.S. 37:2150.1(4)(a)(i) is met based on the sum of ACE's invoices ($144,959.96).[27]  Cummins further asserts that, as an unlicensed contractor under Louisiana law, ACE can only recover the actual costs of material, labor, and services rendered to Cummins, but argues that such recovery is barred because ACE's services fall under the substandard work exception recognized by Louisiana courts.[28]  Alternatively, Cummins claims that ACE's unjust enrichment claim should be dismissed because ACE cannot produce sufficient evidence to support its Invoices.[29]

ACE argues that the work it performed did not require a Louisiana contractor's license because it was engaged as an outsourced maintenance provider and merely mowed grass, moved items/inventory from one side of the facilities to the other, transported equipment, and sourced and procured equipment.[30]  ACE also asserts that it provided maintenance work on an open account basis, with no particular job related to another, and that none of the maintenance services it provided, or any of the individual invoices, ever approached the $50,000 threshold required to be considered a contractor under La. R.S. 37:2150.1(4)(a)(i).[31]  ACE objects to the

---

[26] R. Doc. 48-3 at pp. 10-11 (*citing* R. Doc. 48-17 at p. 2; R. Doc. 48-18 at p. 2; R. Doc. 48-19 at p. 2; R. Doc. 48-20 at p. 2; R. Doc. 48-21 at p. 2; & R. Doc. 48-22 at p. 2).
[27] R. Doc. 48-3 at pp. 9–10.
[28] *Id.* at pp. 16–19.
[29] *Id.* at pp. 19–23.
[30] R. Doc. 51 at pp. 2 & 15–18 (*citing* R. Doc. 51-3 at pp. 30, 118–121; R. Doc. 51-4 at pp. 3, 4, 5, 6, 7–11, & 12; R. Doc. 51-5 at pp. 2–7, 8, 9, 10, & 11).
[31] R. Doc. 51 at p. 2.

Declaration of Brad Bingert, relied upon by Cummins, as inadmissible hearsay.[32] ACE also argues that genuine issues of material fact preclude summary judgment, and it spends a large portion of its Opposition brief contesting 20 of Cummins' alleged undisputed facts. [33]  ACE asserts that, absent Cummins' assumption that the underlying agreement is null and void, the admissible evidence and testimony support ACE's breach of contract and open account claims.[34]  Alternatively, even if the Court determines that it is an unlicensed contractor under Louisiana law, ACE asserts that it is entitled to recover under its unjust enrichment claim and that the substandard work exception does not apply.[35]

In response, Cummins asserts that Bingert's declaration does not constitute inadmissible hearsay and that ACE's invoices contradict its claim that it was merely cutting grass and performing minor, janitorial-type services.[36]  Cummins also argues that ACE violated the Amended Scheduling Order by attaching a complete copy of Curtiss Williams' deposition transcript to its Opposition brief, rather than submitting only the pertinent pages of the transcript, and urges the Court to neither accept the exhibit nor consider the arguments that rely upon the exhibit.[37]  Cummins maintains that ACE has failed to present sufficient evidence to prove the existence of an open

---

[32] *Id*. at pp. 3 & 7–9, 11, 22, & 23.
[33] *Id*. at pp. 4–14.
[34] *Id*. at pp. 18–21.
[35] *Id*. at pp. 21–23.
[36] R. Doc. 55 at pp. 2 & 4–7.
[37] *Id*. at pp. 3–4 (*citing* R. Doc. 51-3).

account,[38] and that ACE cannot produce evidence to prove its damages/the amounts sought in its Invoices.[39]

## II.    LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[40]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[41]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[42]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[43]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

---

[38] R. Doc. 55 at pp. 8–9.

[39] *Id*. at pp. 9–10.

[40] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[41] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

[42] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

[43] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

trial.[44]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[45]

## III.   ANALYSIS

### A. ACE's Breach of Contract, Bad Faith Breach of Contract, and Open Account Claims

In diversity cases like this one,[46] "federal courts must apply state substantive law."[47]  To assert a breach of contract claim under Louisiana law, a plaintiff must allege "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[48]  Thus, the elements of a breach of contract claim are the existence of an agreement, a breach of that agreement, and damages resulting from that breach.[49]  Under La. Civ. Code art. 1997, "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Louisiana law defines an "open account" as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."[50]

---

[44] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

[45] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[46] R. Doc. 1.

[47] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L.Ed. 1188 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997)).

[48] *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108–09 (citations omitted).

[49] *CCAPS, LLC v. HD and Assocs., LLC*, Civ. A. No. 21-2195, 2023 WL 1965087, at *4 (E.D. La. Feb. 13, 2023) (Vitter, J.).

[50] La. R.S. 9:2781(D).

While the Fifth Circuit has recognized that, [c]ourts are split as to whether a party must demonstrate the existence of a contract to recover on an open account claim" in Louisiana,[51] the Fifth Circuit has suggested that a contractual relationship is required to recover an open account claim.[52]

There is no evidence before the Court indicating that there was a written agreement between ACE and Cummins regarding the services provided by ACE at Cummins' two Louisiana facilities. While not specifically addressed in their briefs, the parties seem to agree that they had a contractual relationship whereby ACE, as a vendor for Cummins, agreed to perform facility maintenance work at Cummins' two facilities in Louisiana. For instance, ACE alleged in its state court Petition that, "[a] contractual relationship was created between the parties through their actions."[53] Cummins likewise seems to suggest in its counterclaim that there was a contractual relationship between the parties[54] and describes ACE as its "vendor,"[55] and further references a "purported agreement" between the parties in its Motion for Summary Judgment.[56] The parties, however, dispute the validity of their purported agreement

---

[51] *Louisiana Newpack Shrimp Co., Inc. v. Indigo Seafood Partners, Inc.*, No. 22-30653, 2023 WL 5316473, at *3 (5th Cir. Aug. 17, 2023) (per curiam) (citing authority).

[52] *Id.* ("However, the abovementioned conflicting case law and the relevant statutory provisions indicate that it was not a *manifest* error of law to allow Longhai to recover on its open account claim. That is, while various cases speak to the contractual relationship requirement for open accounts, numerous courts have distinguished between open account claims and contract claims and allowed plaintiffs to recover on open account claims despite the absence of a formal contract. Moreover, considering the distinct sets of instructions it received, the jury's finding that no *contract* existed between Louisiana Newpack and Longhai did not preclude it from finding a *contractual relationship* in support of its separate finding that the parties had an open account.") (emphasis in original).

[53] R. Doc. 1-1 at p. 4, ¶ 12.

[54] *See* R. Doc. 10 at pp. 7–19.

[55] *Id.* at ¶¶ 13, 64, 65, & 66.

[56] *See* R. Doc. 48-3 at pp. 1 ("Consequently, Plaintiff's breach of contract, bad faith breach of contract, and open account claims must be dismissed because any contract made with an unlicensed contractor

which turns on whether ACE was required to have a contractor's license to perform the work.

In Louisiana, it is unlawful for a person to either engage in the business of contracting or to act as a contractor without holding an active contractor's license.[57] "Only a person who has obtained a contractor's license from the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana."[58]  Louisiana law defines a "contractor" as:

> [A]ny person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for any . . . building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.[59]

This Court previously explained that, "whether a contractor's license is needed to perform a specific service depends in part on the nature of the services to be rendered."[60]  "Importantly, any contract made with an unlicensed contractor is an absolute nullity which 'is deemed never to have existed.'"[61]  Additionally, "[a] contract

---

is an absolute nullity and is deemed to have never existed."); R. Doc. 48-3 at p. 9 ("As such, the purported agreement between Allan Contracting and Cummins is an absolute nullity.").

[57] *See* La. R.S. 37:2163(A)(1) ("It shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor in accordance with the provisions of this Chapter.").

[58] *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584 (La. App. 3 Cir. 6/29/83) (*citing* La. R.S. 37:2160).

[59] La. R.S. 37:2150.1(4)(1)(i).

[60] *CCAPS, LLC*, Civ. A. No. 21-2195, 2023 WL 1965087 at *5.

[61] *Id.* (*quoting* La. Civ. Code art. 2033; *Quaternary Res. Investigations, LLC v. Phillips*, 2018-1453 (La. App. 1 Cir. 11/19/20), 316 So.3d 448, 459 ("Any contract made in violation of the Contractors Licensing

that is absolutely null may not be confirmed."[62]  "These provisions were specifically enacted so that unqualified individuals operating in professional fields could not injure or mislead the State's citizens."[63]

The question before the Court is a legal one—whether, based on the services provided by ACE to Cummins, ACE falls within Louisiana's statutory definition of "contractor."[64]  To answer that question, the Court must determine factual issues, namely, whether the services provided by ACE fall within the categories of services listed in La. R.S. 37:2150.1(4)(a) and, if so, whether "the entire cost" of those services is $50,000 or more, as required by § 2150.1(4)(a)(i).  It is undisputed that ACE did not possess a Louisiana contractor's license when it performed work at Cummins' Louisiana facilities.[65]  Consequently, if the services ACE provided fall within the statutory definition of "contractor" and cost at least $50,000, then the agreement between the parties is an absolute nullity and ACE's breach of contract claim, bad faith breach of contract claim, and open account claim fail as a matter of law.  If, however, the services performed by ACE did not require a contractor's license or did not exceed $50,000, then Cummins' Motion for Summary Judgment must be denied with respect to those claims.

---

Law is null and void.") (citing *Tradewinds Env't Restoration, Inc. v. St. Tammany Park, LLC*, Civ. A. No. 06-593, 2007 WL 1191896, at *3 (E.D. La. Apr. 20, 2007) (Barbier, J.), *aff'd sub nom. Tradewinds Env't Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255 (5th Cir. 2009))).

[62] La. Civ. Code art. 2030.

[63] *Tradewinds Env't Restoration, Inc.*, Civ. A. No. 06-593, 2007 WL 1191896, at *3.

[64] *CCAPS, LLC*, Civ. A. No. 21-2195, 2023 WL 1965087 at *6.  *See Sewell v. St. Bernard Parish Gov't*, Civ. A. No. 21-2376-WBV-KWR, 2023 WL 1765923, at *7 (E.D. La. Feb. 3, 2023) (Vitter, J.) ("Although the parties disagree on whether this is a question of law or fact, the Court agrees with Sewell that this is a question of law because it involves the statutory interpretation of the word 'contractor' in La. R.S. 37:2150.4(4)(a).").

[65] R. Doc. 62 at p. 5, ¶ 7.

"The task of statutory interpretation begins and, if possible, ends with the language of the statute."[66]  As set forth above, Louisiana law requires a contractor's license for the "construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for . . . [a]ny building . . . or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes."[67]  Further, because the list of services covered by § 2150.1(4)(a) is disjunctive, if the Court finds that the work performed by ACE falls under any one of the terms in the statute, then ACE necessary meets the definition of "contractor."  It is undisputed that Cummins' two facilities in Louisiana are buildings used for commercial purposes.  The parties disagree, however, regarding whether the services ACE provided to Cummins constitutes maintenance work or "construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment."[68]

To the extent that ACE contests 20 of Cummins' allegedly undisputed facts,[69] the Court finds that those disputed facts have no bearing on the determination of whether ACE's services fall within the definition of a contractor set forth in La. R.S. 37:2150.1(4)(a).  The evidence before the Court shows that many of the services

---

[66] *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013) (citing *In re Nowlin*, 576 F.3d 258, 261–62 (5th Cir. 2009)).
[67] La. R.S. 37:2150.1(4)(a)(i).
[68] *Id.*
[69] R. Doc. 51 at pp. 4–14.

provided by ACE fall squarely within Louisiana's definition of "contractor."  As Cummins points out, Curtiss Williams, the sole owner of ACE,[70] testified during his deposition that ACE installed plywood flooring[71] and applied epoxy to the concrete flooring at one of Cummins' Louisiana facilities.[72]  This clearly falls within the categories of "alteration, repair, improvement . . . or installing material" set forth in La. R.S. 37:2150.1(4)(a).  Williams also testified that ACE built a carport "to build more generators under,"[73] and explained that, "The contractor that was contracted by us to install it refused to comply with some - - with Cummins safety standard.  We had to throw them off the job and we took it over to build it ourselves to comply."[74]  The Court finds that this activity falls within the categories of "construction, alteration, . . . improvement" set forth in La. R.S. 37:2150.1(4)(a).

Williams further testified that ACE removed several barn doors and "scrapped them, and threw them in the trash,"[75] and that ACE installed pre-engineered guardrails, safety barricades,[76] and wire racks[77] at the Cummins facilities.  These actions fall within the categories of "tearing down" and "installing material" in La. R.S. 37:2150.1(4)(a).  When asked to provide some examples of the work that ACE

---

[70] R. Doc. 48-15 at p. 2, ll.11–13.

[71] R. Doc. 48-11 at p. 2, ll. 6–9 & p. 3, ll. 20–25; R. Doc. 48-15 at p. 2, ll.6–9.

[72] R. Doc. 48-11 at p. 2, ll. 6–12 & p. 3, ll.6–8; R. Doc. 48-12 at p. 2, ll.18–25 & p. 3, ll. 5-22.

[73] R. Doc. 48-13 at p. 2, ll.15-19.

[74] *Id.* at ll. 19–25.

[75] R. Doc. 48-14 at p. 2, ll.15–24.  *See* R. Doc. 48-18 at p.2, ll.1–5 ("Q. Let me write this down.  Okay. And then you guys removed and demolished the barn doors.  That was at Jefferson.  A. Yes.").

[76] R. Doc. 48-15 at p. 2, ll.9–10.  *See* R. Doc. 48-18 at p. 2 ll.6–14 ("Q. The barricade fences, the guardrails, the wire racks - - that was at Jefferson?  A. The barricade fence was at Jefferson.  The wire racks and the backing for the pallet racking was at both facilities, a requirement for both facilities, to keep things from being pushed through when you load it and someone is standing on the back side of the pallet rack, to keep it from falling and hitting them.").

[77] R. Doc. 48-15 at p. 3, ll.21–24.  *See* R. Doc. 48-18 at p. 2 ll.6–14 (*supra*).

provides, Williams testified that, "We would, you know, pick up pallets that were broken, sweep the parking lot for nails, cut grass, do landscaping, paint walls, lay tile, epoxy flooring, all included in the pictures previous.  Install chain-link fence. Shore up faulty mezzanine supports.  Put down plywood, etcetera."[78]  Williams also confirmed that ACE "dug out subterraneous roof drains" at one of Cummins' facilities,[79] and either "put in the black pipe"[80] or "cleared a path" for the water[81] for drainage purposes.  Many of these services fall within the categories of "alteration, repair, improvement" and "furnishing labor," as set forth in La. R.S. 37:2150.1(4)(a).

Williams further testified that ACE performed the following work at one of Cummins' Louisiana facilities:

> We put up signs.  We took down signs.  We fixed the overhead cranes. We remodeled the entire bathroom in the adjacent building.  Emptied out junk, hauled off junk.  Cleaned up all the debris and unnecessary items.  There were broken glass and weeds growing and signs that couldn't be read, lights that were busted, oxyacetylene tanks that weren't properly stored, according to OSHA.  Put cabinets in for those, flammable storage cabinets, as well as tank holdings.
>
> Just whatever they asked us.  Built tables.  Rewired the fans, reset the controls on the fans.  Put in pneumatic air lines for - - At the work station. . . .
>
> So we put in coil hose spools for electrical and for pneumatic providence for each work station.  And built tables for them and lift tables and reinforced other tables.  Moved material around for them, old parts, put up on the mezzanine after we had reinforced the top of it.
>
> Painted safety lines, safety stripes.  Relocated the fire extinguishers to the proper location.  Updated and relabeled all of the safety board and postings and MSDS sheets and logs and safety inspections that were necessary but hadn't been kept up.

---

[78] R. Doc. 48-17 at p. 2, ll.2–12.
[79] R. Doc. 48-18 at p. 2, ll.15–18.
[80] *Id*. at p. 3, ll.16–21.
[81] *Id*. at p. 3, ll.22–p. 4, ll.7.

Fixed the roof leaks.  Carried off - - Well, we labeled and arranged for removal of hazardous materials and containers full of spent oil and old gasoline, et cetera.

Cleaned the lighting and replaced the bulbs in the paint booth and the filters in the paint booth and the lighting in the paint booth and repaired the doors on the paint booth.

Installed new overhead LED lighting all throughout the work area in multiple buildings and storage areas.  Put in switches and new doors, hose reels, things - - I mean, quite a built, [sic] actually. [82]

While not all of the foregoing activities fall within the statutory language of La. R.S. 37:2150.1(4)(a), the Court finds that some of them, including but not limited to remodeling a bathroom, installing cabinets and tank holdings, fixing roof leaks, and installing overhead LED lighting, fall within the categories of "alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material" in La. R.S. 37:2150.1(4)(a).

ACE does not address any of the foregoing testimony in its Opposition brief. In fact, ACE has admitted, in its written discovery responses, that it performed many of the above services.  Specifically, ACE admitted that it: (1) installed plywood flooring at one of Cummins' Louisiana facilities; (2) constructed an awning station at one of the facilities; (3) removed and demolished (*i.e.*, tore down) industrial barn doors at one of the facilities; (4) installed barricade fences, guardrails, and wire racks at one of the facilities; (5) installed subterraneous roof drains at one of the facilities; and (6) applied epoxy to concrete slabs at both of the Louisiana facilities.[83]  All of these services fall within the statutory definition of "contractor."  The deposition testimony

---

[82] R. Doc. 48-18 at p. 4, ll.12–25; R. Doc. 48-21 at p. 2, ll.1–25; R. Doc. 48-22 at p. 2, ll.1–6.
[83] R. Doc. 48-10 at pp. 2–3.

attached to ACE's Opposition brief likewise shows that ACE installed plywood floors and applied epoxy to the floor of the Cummins facilities,[84] installed an office (which involved putting up a wall, installing flooring, and installing an air conditioning unit),[85] "fixed power lines,"[86] and built a "pretty big" carport to house generators.[87] Thus, it appears undisputed that ACE performed some services for Cummins that fall within the categories of activities set forth in La. R.S. 37:2150.1(4)(a) and require a contractor's license.

ACE has argued that it did not need a contractor's license because it "acted at the continuous direction of Cummins' representatives"[88] and because it did not provide services related to a construction project.[89] This Court rejected similar arguments in *CCAPS, LLC v. HD and Associates, LLC,* finding that, "Plaintiff goes too far in suggesting that because Plaintiff did not agree to perform construction work Plaintiff, therefore, was not a 'contractor.' Simply put, that Plaintiff did not perform *construction* work does not take Plaintiff outside the ambit of the statute."[90] The Court further held that, "Plaintiff's interpretation would have this Court excise whole words and phrases from § 2150.1(4)(1) [sic], as though they were mere surplusage. The Court will not ignore the clear language of the statute which explicitly lists

---

[84] R. Doc. 51-3 at p. 118.
[85] R. Doc. 51-4 at pp. 8, 9, & 11; R. Doc. 51-5 at p. 9
[86] R. Doc. 51-5 at p. 9.
[87] R. Doc. 51-4 at pp. 10 & 11.
[88] R. Doc. 51 at pp. 5–6, 10,15, & 23.
[89] *Id.* at pp. 15 & 17.
[90] Civ. A. No. 21-2195, 2023 WL 1965087, at *7 (E.D. La. Feb. 13, 2023) (emphasis in original).

several other types of work besides construction."[91]  As in *CCAPS*, the Court finds

that the foregoing services provided by ACE are encompassed by the other terms

included in La. R.S. 37:2150.1(4)(a) and, as such, required a contractor's license if the

value of the services met or exceeded $50,000.

    To the extent ACE argues that the work it performed did not require a

contractor's license under Louisiana law because it was engaged as an outsourced

maintenance provider,[92] the Court agrees that *some* of the services it provided to

Cummins do not fall within the categories of activities set forth in La. R.S.

37:2150.1(4)(a).  ACE has submitted evidence showing that it painted safety lines on

the ground/floor of the Cummins facilities,[93] painted lines in a parking lot,[94] painted

safety barriers,[95] trimmed the grass,[96] landscaped,[97] and installed a safety fence at

one of the facilities.[98]  In its Reply brief, Cummins does not contest that ACE provided

these services, but argues that Williams' testimony shows that ACE "was doing much

more than cutting grass and hauling equipment."[99]

    While the Court finds that ACE provided several services to Cummins that

required a contractor's license under La. R.S. 37:2150.1(4)(a), Cummins has failed to

---

[91] *Id*. (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 467–77, 123 S.Ct. 468, 123 S.Ct. 1655 (2003) ("[W]e should not construe the statute in a manner that . . . would render a statutory term superfluous.")) (internal citation omitted).
[92] R. Doc. 51 at pp. 2, 5, 15, 16, 17, 18, & 23.
. 15 (*citing* R. Doc. 51-3 at pp. 30, 118–121; R. Doc. 51-4 at pp. 3, 4, 5, 6, 7–11, & 12; R. Doc. 51-5 at pp. 2–7, 8, 9, 10, & 11).
[93] R. Doc. 51-3 at p. 118; R. Doc. 51-4 at pp. 8 & 11; R. Doc. 51-5 at p. 9.
[94] R. Doc. 51-4 at p. 5.
[95] *Id*.
[96] R. Doc. 51-3 at p. 118.
[97] R. Doc. 51-4 at pp. 8 & 12.
[98] *Id*. at p. 5.
[99] R. Doc. 55 at pp. 4-5.

submit evidence showing that the entire cost of those services was $50,000 or more, as required by La. R.S. 37:2150.1(4)(a)(i).[100]  Cummins argues that it is "undisputed that the cost of the services allegedly performed by Allan Contracting is greater than $50,000.00" based solely on the sum of ACE's 12 outstanding invoices ($144,959.96),[101] but it is unclear from the face of the invoices what services ACE billed for in each invoice.  Although each invoice includes a place for ACE to provide a description of the items and services for which it billed, half of the invoices merely state that "labor and materials" were provided for a certain date range and describe the services as, "Labor – maintenance 4 men" and "Small tools, consumables, materials, lump sum."[102]  Additionally, two of the invoices describe the work billed as "Capital Project.  New slab on grade project.  Equipment and utilities coordination[]" and "Travel per diem hotel & meals" for the months of October and November,[103] but do not specify what services were actually performed.  When Curtiss Williams was

---

[100] The Court notes that ACE did not attach a copy of its outstanding invoices to either its state court Petition (R. Doc. 1-1) or its Opposition brief (*See* R. Docs. 51-2 through 51-8).  Cummins, however, attached a copy of the 12 outstanding ACE invoices as an exhibit to its Motion (R. Doc. 48-5), and ACE attached a copy of the invoices as an exhibit to another motion pending before the Court (R. Doc. 49-5; *See* R. Doc. 49-4 at p. 2, ¶¶ 5 & 6, nn.1 & 2 (*citing* R. Docs. 49-5 & 49-6)).

[101] R. Doc. 48-3 at p. 9.

[102] R. Doc. 48-5 at pp. 3.  *See* R. Doc. 48-5 at p. 4 (invoice for "labor and materials 11-10-22 through 11-16-22 Kenner and Jefferson" describes the services as "Labor – maintenance 5 men" and "Small tools, consumables, materials; lump sum" and seeks a total of $18,000); R. Doc. 48-5 at p. 5 (invoice for "labor and materials 11-17-22 through 11-23-22 Kenner and Jefferson" describes the services as "Labor – maintenance 3 men" and "Small tools, consumables, materials; lump sum" and seeks a total of $13,850; R. Doc. 48-5 at p. 7 (invoice for "labor and materials 11-24-22 through 11-30-22 Kenner and Jefferson" describes the services as "Labor – maintenance 3 men" and "Small tools, consumables, materials; lump sum" and seeks a total of $6,590); R. Doc. 48-5 at p. 9 (invoice for "labor and materials 12-1-22 through 12-7-22 Kenner and Jefferson" describes the services as "Labor – maintenance 4 men," "Small tools, consumables, materials; lump sum," and "Labor – 4 men – working on canopy/carport (no charge" and seeks a total of $12,615); R. Doc. 48-5 at p.10 (invoice for "labor and materials 12-8-22 through 12-14-22 Kenner and Jefferson" describes the services as "Labor – maintenance 4 men," "Small tools, consumables, materials; lump sum," and "Labor – 4 men – working on canopy/carport (no charge" and seeks a total of $3,195).

[103] R. Doc. 48-5 at pp. 1 & 6.

asked what services ACE provided for one of the "capital projects," Williams merely repeated the language contained in the invoice and ultimately indicated that the invoice did not cover any of the services that the Court has determined fall within the statutory language of La. R.S. 37:250.1(4)(a).[104]  The remaining four invoices include the following description of services: (1) "4 week rental, articulating boom lift, Jefferson; Overhead mark-up 15%;"[105] (2) "Per diem, per man, lodging, meals.  10/6/22 thru 12/9/22;"[106] and (3) "Bill for engineering services; mark up 15%."[107]  When asked about one of the invoices for the articulating boom lift, Invoice No. 13612022, Williams testified that the boom lift was used to "take down the barn doors and to fix the overhead crane."[108]   The amount on that invoice is $3,985.48.[109]

Cummins has failed to direct the Court to any evidence in the record that demonstrates the total amount billed by ACE for the services that the Court has determined required a contractor's license under La. R.S. 37:2150.1(4)(a).  As such, the Court finds that a genuine issue of material fact exists regarding the cost of those services, which precludes the Court from making a determination regarding whether the contract between the parties is an absolute nullity because ACE did not have a contractor's license.   Because Cummins seeks the dismissal of ACE's breach of contract, bad faith breach of contract, and open account claims based solely on its argument that the contract between the parties is an absolute nullity since ACE

---

[104] R. Doc. 51-3 at pp. 125-130 (Williams seems to state that the capital project involved ACE determining/"eyeballing" whether a monitoring station and generator would fit on a concrete slab).
[105] R. Doc. 48-5 at pp. 2 & 8.
[106] *Id*. at p. 11.
[107] *Id*. at p. 12.
[108] R. Doc. 51-3 at p. 115.
[109] R. Doc. 48-5 at p. 8.

lacked a contractor's license,[110] the Court finds that Cummins has failed to carry its burden of proving that it is entitled to summary judgment on these claims. Accordingly, the Motion for Summary Judgment is denied to the extent Cummins seeks the dismissal of these three claims.[111]

### B. ACE's Unjust Enrichment/Quantum Meirut Claims

Cummins further argues that it is entitled to summary judgment on ACE's unjust enrichment claim because the services ACE provided were substandard, which bars ACE's recovery of its actual costs under the substandard work exception recognized by Louisiana courts.[112]  Cummins asserts that ACE submitted an invoice for the installation of an awning cover that was erected in a substandard manner and could not be used for its intended purposes, and that Cummins had to hire another vendor to install the awning.[113]  Cummins also asserts that ACE improperly installed several racks without the required safety meshing support, failed to complete the shop floor coating/painting in two areas of one of the Louisiana facilities, and never procured bracketry required to install wall mounted fans for one of the facilities.[114]

---

[110] R. Doc. 48-3 at pp. 13–16.

[111] Further, the Court recognizes that even if ACE was required to have a contractor's license to perform some of the services that it provided for Cummins, that may not render the entire agreement between the parties an absolute nullity.  Louisiana law provides that, "[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision."  La. Civ. Code art. 2034.  *See Touro Infirmary, Preferred Continuum Care-New Orleans, LP v. Travelers Prop. Cas. Co. of Am.*, Civ. A. No. 06-3535, 2007 WL 496858, at *4 (E.D. La. Feb. 13, 2007) (Vance, J.).  Here, however, there is insufficient evidence before the Court to make that determination, as there is no written agreement between the parties and neither party has provided evidence as to the parties' intent.

[112] R. Doc. 48-3 at pp. 1–2 & 15, 16–19.  *See Dennis Talbot Constr. Co., Inc. v. Privat Gen. Contractors, Inc.*, 2010-1300 (La. App. 3 Cir. 3/23/11), 60 So.3d 102; *Quaternary Resource Investigations, LLC v. Phillips*, 2018-1543 (La. App. 1 Cir. 11/19/20), 316 So.3d 448).

[113] R. Doc. 48-3 at p. 17 (*citing* R. Doc. 48-4 at ¶¶ 20 & 21).

[114] R. Doc. 48-3 at p. 17 (*citing* R. Doc. 48-4 at ¶¶ 22, 23, & 24).

Alternatively, if the Court determines that the substandard exception does not apply, Cummins asserts that ACE's unjust enrichment claim still fails because ACE cannot produce evidence to support its outstanding invoices.[115]  Cummins claims that when asked to provide all back-up documents that support the amounts billed in the invoices, ACE only produced photographs of the two facilities.[116]

In response, ACE argues that genuine issues of material fact preclude summary judgment on its unjust enrichment claim.  ACE asserts that it could not complete the awning because it was dismissed by Cummins and told not to return to the premises[117]  ACE further asserts that it performed its tasks at the direction of Cummins, that Williams testified regarding the installation of the safety mesh, and ACE objects to Cummins' reliance upon the Declaration of Bradley Bingert, which ACE claims constitutes inadmissible hearsay.[118]  According to ACE, "[t]he record illustrates that there is no evidence that the substandard work exception applies."[119]

Setting aside, for the moment, ACE's argument regarding the admissibility of Bingert's declaration, the Court finds that ACE has raised a genuine dispute regarding whether the work it performed falls within the substandard work exception.  Louisiana courts have held that an unlicensed contractor can still recover the actual costs of their materials, services, and labor, but not any overhead or profit, unless the contractor "fraudulently obtained the contract, if he had been

---

[115] R. Doc. 48-3 at pp. 15–16 & 19–23.
[116] *Id.* at pp. 20–21.
[117] R. Doc. 51 at p 21 (*citing* R. Doc. 51-4 at pp. 10–11).
[118] R. Doc. 51 at pp. 22–23.
[119] *Id.* at p. 23.

inexperienced at the work he performed, or, if his work had been substandard."[120]
Here, ACE has produced deposition testimony indicating that ACE installed black
steel mesh on the back of the warehouse racks,[121] and that ACE could not finish
installing the awning at issue because it was kicked off the project.[122]  The Court finds
that these facts are material to ACE's unjust enrichment claim and that there is a
genuine dispute between the parties regarding whether ACE's work was
substandard.  The Court further finds that ACE has produced deposition testimony
showing that ACE provided limited information on its invoices at the direction of
Cummins, and that it has photographs that support the outstanding invoices.[123]  As
such, Cummins has failed to show that it is entitled to summary judgment on ACE's
unjust enrichment claim, and the Motion for Summary Judgment must be denied as
to that claim.

---

[120] *Dennis Talbot Const. Co., Inc. v. Privat General Contractors, Inc.*, 2010-1300 (La. App. 3 Cir. 3/23/11), 60 So.3d 102, 104–105 (quoting *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 586–87 (La. App. 3 Cir. 1983)) (internal quotation marks omitted).  *See Quaternary Res. Investigations, LLC v. Phillips*, 2018-1453 (La. App. 1 Cir. 11/19/20), 316 So.3d 448, 466 ("In **Hagberg** and **Dennis Talbot**, the Third Circuit held that if a contractor's actions fall into the 'substandard work exception,' it is not entitled to recover its actual cost of materials, services, and labor under the theory of unjust enrichment.") (emphasis in original).
[121] R. Doc. 51-3 at p. 171.
[122] R. Doc. 51-4 at pp. 10–11.
[123] R. Doc. 51-3 at pp. 83–84, 119–20, 124–25, 160–200; R. Doc. 51-4 at p. 6.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion for

Summary Judgment[124] is **DENIED.**

New Orleans, Louisiana, November 4, 2024.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[124] R. Doc. 48.